## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA ELLIS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2018-CV-___2:18-CV-1549___ |
| | ) | |
| BNY MELLON CORP., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## COMPLAINT

Plaintiff Lisa Ellis complains as follows:

### NATURE OF ACTION

This is an action for race discrimination under Title VII, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981.   Lisa Ellis worked for BNY Mellon Corp. as a senior control analyst.  BNY Mellon fired Ellis after she posted a comment under a news article that appeared on Facebook.    Ellis' comment took issue with tactics used by a group protesting the shooting of a young black man, Antwon Rose, by a white police officer. Ellis' post did not make any reference to race, either expressly or impliedly.  It was one of 2000 posts commenting on the article.  Nicole Manns, a BNY Mellon vice president of human resources, saw Ellis' post and was offended.  Manns, who is black, believed that a white person had no standing to criticize the protesters.  Using social media, Manns urged people to contact BNY Mellon's ethics hotline and demand that Ellis be fired. Mann then used the complaints she solicited to convince BNY Mellon to fire Ellis. Manns' actions leave no doubt that Ellis was fired because she is white.  Ellis seeks

compensatory and punitive damages for BNY Mellon' race discrimination, including damages for back pay, front pay and mental and emotional distress.

## JURISDICTION AND VENUE

1.      This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981.  This court therefore has subject matter jurisdiction under 28 U.S.C. § 1331.

2.      Ellis has performed all conditions precedent to the filing of this action, including the timely filing of a charge of discrimination with the Equal Employment Opportunity Commission on September 24, 2018, and the filing of this action within 90 days of the receipt of the Notice of Right to Sue.   A copy of the right to sue letter is attached as Exhibit 1.

3.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2).

## THE PARTIES

4.  Plaintiff Lisa Ellis is a citizen of Pennsylvania.  At all relevant times, Ellis was an employee of BNY Mellon within the meaning of 42 U.S.C. § 2000e(f).  Ellis is white.

5.      Defendant BNY Mellon is a Delaware corporation with its principal place of business in New York, New York. BNY Mellon is an employer within the meaning of 42 U.S.C. §2000e(b)-(d).  BNY Mellon employed over 500 persons at all times relevant to this action.

## GENERAL ALLEGATIONS

6.      BNY Mellon recruited and hired Ellis on July 27, 2015 to work as a Senior Control Analyst in its Wealth Management Department in Pittsburgh.  Ellis, her daughter, and her young son moved from Philadelphia to Pittsburgh after Ellis accepted the job.

7.     Ellis performed her job at a high level, consistently received favorable performance reviews and awards, and was well-regarded by her coworkers and supervisors.

8.     The events leading to Ellis' unlawful termination began with the tragic killing of Antwon Rose, a young black man, by a East Pittsburgh Police officer on June 19 2018.

9.     The shooting led public protests throughout the city.  Some of the protest groups used aggressive tactics - they blocked vehicle and pedestrian traffic in downtown Pittsburgh and shut down the Parkway East.

10.     The protests in downtown Pittsburgh frightened commuters to the extent that some downtown employers encouraged their employees to work from home. On June 25, BNY Mellon sent out a company-wide email that urged its employees to work from home the following day if possible.

11.     On June 30, a news article posted on Facebook reported that a Pittsburgh-area councilman drove through a crowd of protesters blocking a street in Pittsburgh's North Shore during a Pittsburgh Pirates game.  The protesters kicked the councilman's car and smashed his windshield, but the councilman ending up being charged with reckless endangerment.   Many thought that this was unfair and over 2000 comments appeared under the Facebook article.

12.     After reading the article, Ellis believed that the protesters had gone too far and that the councilman was unjustly charged.   On June 30, she posted the following comment under the Facebook article:   "Total BS.  Too bad he didn't have a bus to plow through."   Ellis posted her comment in her own name, made no mention of BNY Mellon, and did not purport to speak on its behalf.  Her comment was clearly directed at

the tactics of the protestors and not at the merits of their cause or their racial identity. There was nothing racist about the post and the bus reference was obviously not meant to be taken literally.

13.     Nonetheless, some protesters were offended by Ellis' comment, characterizing it as an expression of "white privilege."   The protestors looked up Ellis' Facebook account and discovered that she worked for BNY Mellon.  The protestors bragged that they had succeeded in getting over 50 white people fired for posting comments critical of the protests.  Now they intended to target Ellis.

14.     Adam Lewis, a support of protests, wrote in a Facebook post that "my woman is the person in the company that would handle this" and stated that he had forwarded Ellis' post to her.   Lewis was referring to his girlfriend, Nicole Narvaez Manns, who is a vice president of human resouces for BNY Mellon.

15.     On July 2, Lewis posted another message on Facebook stating that Manns wants "everyone" to contact BNY Mellon and demand that Ellis be fired.  Meiya Elem, a black BNY Mellon employee, had posted BNY Mellon's ethic's hotline number on Facebook for people to call and complain about Ellis.

16.     Armed with the complaints that she had solicited, Manns communicated with BNY Mellon management in New York and urged that BNY Mellon immediately fire Ellis.

17.     On July 3, BNY Mellon fired Ellis without notice and without conducting an investigation. BNY Mellon told Ellis that her comment about the article violated its code of conduct.  But when asked by Ellis, BNY Mellon refused to identify the provision of the code she purportedly violated.

18.     BNY Mellon's code of conduct prohibits racial and sexual harassment in the workplace, including the dissemination of offensive emails to coworkers.  Ellis' post did not violate this policy, or any other policy contained in Mellon's code of conduct. Ellis' comment was not racist.  Nor did she send her comment to her coworkers in an email or through any other other medium.  And her comment did not interfere with anyone's work performance or create a hostile work environment.

19.     BNY Mellon later offered a different pretext for terminating Ellis.  After Ellis applied for unemployment benefits, BNY Mellon told the Pennsylvania Office of Unemployment Compensation that Ellis was fired for poor job performance.  That was false.  Ellis was an exemplary employee who had consistently received favorable performance reviews during her three-year tenure at BNY Mellon.

20.     Ellis was not fired for violating BNY Mellon's code of conduct or for poor job performance.  She was fired because of her race. BNY Mellon would not have fired Ellis if she were not white.  Manns targeted Ellis because she was a white person who dared to criticize the protestors. Manns was candid about her belief that white people had no right to express their views about the Antwon Rose incident.   She posted the following message on her Facebook page around the time Ellis was fired:  "I just read some comments related to Antwon Rose, Jr. running.  Here' an idea.  If you've never experienced what it feels like to be in a situation thsat could result in your death, NO MATTER WHAT YOU DO....please kindly Shut TF Up."

## FIRST CLAIM FOR RELIEF

### (Race Discrimination under Title VII, 42 U.S.C. § 2000e et seq.)

21. Ellis incorporates paragraphs 1-20, above.

22. Title VII prohibits race discrimination in employment.

23. As set forth above, BNY Mellon terminated Ellis because of her race in violation of Title VII.

24. As a result of BNY Mellon's violation of Title VII, Ellis has suffered a loss of back pay, and damages under 42. U.S.C. § 1981(a), including loss of front pay and emotional and mental distress.

25. BNY Mellon's conduct was intentional, wilful, wanton and malicious, justifying an award of punitive damages.

## SECOND CLAIM FOR RELIEF

### (Race Discrimination under 42 U.S.C. § 1981)

26. Ellis incorporates paragraphs 1-25, above.

27. Section 1981 prohibits race discrimination in the making and enforcement of contracts.

28. Ellis had a contractual relationship with BNY Mellon within the meaning of § 1981.

29. BNY Mellon fired Ellis because of her race in violation of § 1981.

30. As a result of BNY Mellon's violation of § 1981, Ellis has suffered compensatory damages, including loss of back pay and front pay and mental anguish, humiliation, distress, inconvenience and loss of enjoyment of life.

31. BNY Mellon has acted with malice or reckless indifference to the rights of Ellis, thereby entitling her to an award of punitive damages.

WHEREFORE, Ellis prays for a judgment as follows:

1. That the Court grant full front pay to the Ellis;
2. That the Court grant full back pay to the Ellis;
3. That the Court grant Ellis compensatory damages for the humiliation, emotional distress, and other damages caused by BNY Mellon's conduct;
4. That the Court grant Ellis punitive damages for BNY Mellon's ' malicious and recklessly indifferent conduct;
5. That the Court grant Ellis expenses of litigation, including reasonable attorneys' fees, pursuant to the Title VII, and 42 U.S.C. § 1988;

7.    That    the    Court    grant    Ellis    a    jury    trial;
8.    That    the    Court    grant    Ellis    all    other    relief    the    Court
deems just and proper.


DATED:  November 6, 2018          By:    Respectfully submitted,

                                         The Law Offices of Vincent Colianni
                                         Attorneys for Plaintiff


                                         /s/ Vincent Colianni, II
                                         Vincent Colianni,
                                         4001 Village Run Road
                                         Wexford, PA. 15090
                                         Telephone: (340) 690-0629
                                         Facsimile: (340) 719-1770
                                         vinny@colianni.com